# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

MICHAEL RAY BREDEMEIER,

            Petitioner,

    v.

BRYAN PHILLIPS, Warden,

            Respondent.

Case No. 5:22-cv-02016-HDV (SK)

**ORDER ACCEPTING REPORT AND RECOMMENDATION TO DENY HABEAS PETITION**

    Pursuant to 28 U.S.C. § 636, the Court has reviewed the filed (Corrected) Report and Recommendation to deny Petitioner's Habeas Petition and any relevant records as needed.  Because the time for objections has passed with none filed, the Court need not review de novo the findings and conclusions in the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

    THEREFORE, the Court accepts the Report and Recommendation and orders that the petition under 28 U.S.C. § 2254 be denied.  Judgment will accordingly be entered dismissing this action with prejudice.

    IT IS SO ORDERED.

DATED:  6/16/25

HERNAN D. VERA
United States District Judge

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

MICHAEL RAY BREDEMEIER,

           Petitioner,

    v.

BRYAN PHILLIPS, Warden,

           Respondent.

Case No. 5:22-cv-02016-HDV (SK)

**REPORT AND RECOMMENDATION TO DENY HABEAS PETITION**

Petitioner is a California inmate serving 90 years to life in prison after a jury convicted him of child sex offenses against two victims. On appeal, he claimed that the trial court incorrectly admitted evidence of uncharged bad acts including prior child sex crimes, as well as unnecessary and unreliable expert testimony, in violation of state evidence law and federal due process. He also claimed that one of the victim's testimony was insufficient to support three of his seven convictions involving that victim. The California Court of Appeal rejected these claims on the merits in the last reasoned state court decision. Through retained counsel, petitioner now seeks federal collateral review under 28 U.S.C. § 2254, raising the same claims the court of appeal denied on the merits.

As amended by the Antiterrorism and Death Penalty Act of 1996 (AEDPA), however, § 2254 precludes relitigation of these claims unless (as pertinent here) petitioner proves that the court of appeal's decision contradicted or unreasonably applied clearly established federal law as determined by the U.S. Supreme Court. *See* 28 U.S.C. § 2254(d)(1).

Petitioner has not carried that burden.  Indeed, he has not even framed his habeas claims in correct AEDPA terms.  In any case, petitioner has neither shown that the court of appeal's rejection of his evidentiary claims was contrary to or an unreasonable application of controlling Supreme Court precedent, nor established that the court of appeal unreasonably applied the clearly established federal law governing his insufficiency of evidence claims. As a result, the petition should be denied and this action dismissed.

## I.

## BACKGROUND

In 2018, police received a complaint that Jane Z.R., then 15 years old, had been sexually abused by petitioner over many years starting when she was nine or 10 years old.  (1 RT 99–103).  Z.R. met petitioner while living with her adoptive parents who were close family friends of his, and so she viewed him as surrogate grandfather (petitioner was in his mid to late-50s at the time).  (1 RT 110–12, 115–17, 125, 145).  Z.R. reported at least two instances of sexual penetration in late 2012 or early 2013 while in theaters watching movies with petitioner, as well as "repeated" incidents of lewd acts afterward at petitioner's home during consecutive summers from 2013 to 2016.  (1 RT 116–23, 126–27, 132–33).[1]  Police connected Z.R.'s complaint to another they had received around 2007 from Jane M.D, who was a friend of petitioner's daughter in elementary school.  (1 RT 53–64).  M.D. reported that petitioner had committed lewd acts when she was around 11 years old during a sleepover with his daughter in 2000.  (1 RT 62–66, 76–77).  Like Z.R., M.D. kept that alleged abuse a secret until years later when she graduated from high school.

---

[1] According to a police witness, Z.R. also reported to social services that petitioner committed a sexual penetration or lewd act at a church her adoptive family attended with petitioner.  (1 RT 147, 178–79, 182–85).

A. Trial Testimonies

After investigating the victims' allegations, the State of California charged petitioner with two counts of sexual penetration with a child 10 years of age or younger (Z.R.); five counts of lewd acts with a child under 14 years of age (Z.R.); an additional sixth lewd acts count (M.D.); and one count of molesting a minor under the age of 18 years (Z.R.). (CT 143–47, 156–70). Both victims testified at trial along with several percipient witnesses, including witnesses contradicting the victims' accounts. (1 RT 53–64, 92–185). One of the state's witnesses was Z.R.'s biological grandmother who uncovered her abuse upon discovering Instagram messages and comments between her and petitioner. (1 RT 144–46). In the messages, exchanged after Z.R. had moved out of her adoptive family's home in 2017, petitioner professed his continuing love for Z.R. and his desire to be her boyfriend. (1 RT 99–103, 150–52, 161). He also commented on Instagram pictures Z.R. posted, describing her as "cutie" and "hottie." (1 RT 144–46, 161, 166).[2]

For his part, petitioner didn't testify at trial, but his attorney called witnesses including members of Z.R.'s adoptive family and petitioner's daughter. One younger adoptive brother remembered (when he was in third grade) going to two movies with petitioner and Z.R., where she sat between them in the theaters. (2 RT 290–94). He saw nothing unusual during either movie and said that Z.R. acted normal after the movies finished. (2 RT 293–94). Z.R.'s adoptive mother testified that she only remembered Z.R. being alone with petitioner perhaps twice during birthday parties. (2 RT 306–07). She said that Z.R. never appeared upset after those visits and that all her

---

[2] When the grandmother disclosed these posts to Z.R.'s adoptive parents, the mother was "concerned" and "scared," and the father thought they were "inappropriate." (2 RT 335–36, 342–43). The father confronted petitioner about them, but he neither denied nor confirmed sending the messages to Z.R. (2 RT 342–43). Such comments were not unusual according to Z.R., who recounted one birthday party of hers when petitioner said that she was "hotter than" his wife and offered to answer sex questions. (1 RT 121, 141).

children, including Z.R., liked petitioner and often wanted to sit next to him
in theaters.  (2 RT 309–10).  Finally, petitioner's daughter testified about the
sleepovers with M.D.  (2 RT 320–25).  She recalled one when M.D. woke up
and said that her father had "done something" to her.  (2 RT 324).  But she
couldn't remember how she responded and thought they both just eventually
went back to sleep.  (*Id.*).  According to the daughter, petitioner weighed
more than 400 pounds at the time and couldn't walk well unassisted.[3]  (2 RT
325–26).  She added that M.D. came over to their home again at least once
for another sleepover.  (2 RT 325).

   B. <u>Challenged Evidence</u>

      In addition to victim and witness testimonies, the state introduced (1)
incriminating data found on petitioner's cellphone, (2) evidence of prior
uncharged child sex abuse, and (3) expert testimony about "Child Sexual
Abuse Accommodation Syndrome" (CSAAS).  The cellphone evidence
included links to videos titled "Father F*cks Schoolgirl Daughter" and
"Father and Daughter Live on Cute Baby Cam," as well as Internet search
history for terms like "father f*cking daughter" and "young girls."  (1 RT
243–47, 265).  The prior uncharged crimes involved petitioner's younger
cousin by nine years, who testified that in the late 1970s (when she was
between seven and 10 years old) petitioner sexually molested and abused
her.  (1 RT 24–35).[4]  And the CSAAS expert testified about the "pattern of

---

[3] Other witnesses too, including Z.R., testified that petitioner had been a large man who
often used a cane to walk during the relevant years.  (1 RT 172–73; 2 RT 291, 310).

[4] According to the cousin (J.P.), petitioner would masturbate in front of her when they
were alone.  (1 RT 24–28).  One time, petitioner sat on top of her, causing pain but with
no sexual penetration.  (1 RT 27).  She described another time when petitioner woke her
while asleep at his house and performed oral sex.  (1 RT 31–32).  He tried again another
night while babysitting at her house, but she screamed until he left her alone.  (1 RT 32–
33).  Many years later, petitioner reportedly approached her and said that she has the
"sweetest p*ssy" he has ever "tasted."  (1 RT 41).  The cousin never reported these
incidents sooner because it would have torn their family apart.  (1 RT 34–35).

behaviors many children exhibit when they've been sexually abused,"
including delayed disclosure of abuse and contradictory or accommodating
behavior with abusers. (1 RT 191, 197–98, 200). The expert added,
however, that she had neither interviewed the victims nor reviewed any
police reports, so her testimony was not intended to offer opinions about
petitioner's specific case. (1 RT 220–22).

Petitioner's counsel objected before trial to the use of all this evidence.
(CT 98–108; 1 RT 3–9, 200–15). He argued that petitioner's uncharged bad
acts—found in the cellphone and as alleged by his cousin—amounted to
criminal propensity evidence that should be excluded for unfair prejudice
and juror confusion. He also opposed the expert testimony, arguing that the
science around CSAAS was unreliable and that such testimony was unhelpful
in this case. Applying the relevant California rules of evidence, the trial
court overruled the defense objections. (1 RT 4–7, 10–11). It found that the
challenged evidence was offered for permissible purposes relevant to the
charged crimes and that none of the evidence would unduly prejudice,
confuse, or mislead the jury. When weighing the probative value of that
evidence against the risks of misleading, confusing, or prejudicing the jury,
the trial court added that any such risks would be further mitigated with
limiting instructions (which the court later issued for all three challenged
items of evidence) and defense counsel's cross-examination of the witnesses
(through whom the challenged evidence was later introduced). (1 RT 9–11).

C. Petitioner's Defense

Petitioner does not claim that his attorney performed inadequately in
mounting his defense at trial.[5] Nor would the record support an ineffective

---

[5] On appeal, he raised only contingent claims of ineffective trial assistance to avoid
procedural default in case the court of appeal were to find that he had forfeited his
evidentiary claims for lack of objection at trial. (LD 3). But the court of appeal found no
such procedural default and addressed petitioner's claims on their merits. (LD 5).

assistance claim anyway.  Most importantly, counsel worked to impeach the
credibility of the victims (including petitioner's cousin) and the reliability of
their memories so many years after the alleged abuses.  (1 RT 165–85; 2 RT
397, 399, 402–03).  For instance, defense counsel successfully elicited Z.R.'s
denial that any lewd act happened in a church, as the state claimed she had
reported to social services.  (1 RT 179).  Counsel also established that police
hadn't ruled out whether others had "access" to petitioner's cellphone or
even if he had personally "downloaded" and "viewed" child pornography on
the phone.  (1 RT 246, 247, 404).  As well, counsel elicited from the CSAAS
expert that she couldn't attest if the victims had that syndrome, that
teenagers often make up stories to deflect unrelated adolescent problems,
and that CSAAS cannot enhance a victim's credibility or prove that alleged
abuse happened just because it isn't revealed until years later.  (1 RT 220–
22).  Counsel established, moreover, that petitioner's weight and restricted
mobility at the time of the victims' alleged abuses would have made it too
difficult for him to commit the alleged sexual acts in the ways the victims had
described.  (2 RT 397–98, 401).

Defense counsel also homed in on Z.R.'s testimony around her most
serious allegations of sexual penetration and the number of alleged lewd
acts.  (1 RT 165–179).  As pertinent here, when asked if petitioner's fingers
entered her vagina during the first movie, Z.R. replied, "I don't know if it was
that time it did . . . because I was young, but I believe so."  (1 RT 120).  Asked
the same question about the second movie, Z.R. said that petitioner put his
hands in her pants again but she couldn't remember if his fingers entered
her vagina.  (1 RT 122–24).  When asked to recount what happened in the
summers, Z.R. said that petitioner touched her vagina in his outdoor hot tub
"frequently."  (1 RT 127–33).  Asked for a number, she said it happened
"more than two" times but couldn't "remember" or "count" if it was "more

than three." (1 RT 127–28). Even though she later testified that the lewd
acts happened "not just . . . one time each summer" but "repeatedly each
summer" from 2013 to 2016 (1 RT 179), defense counsel zeroed in on these
perceived equivocations or generalities in Z.R.'s testimony to argue that
there was insufficient evidence to convict petitioner of any sexual
penetration charges or lewd acts involving Z.R. (2 RT 397, 399–400).

Following seven days of trial, the jury was convinced by at least some
of petitioner's defenses and returned partially split verdicts after a day and a
half of deliberations. (2 RT 416–21). For Z.R., the jury found petitioner
guilty of only one count of sexual penetration related to the first movie
incident, but acquitted him of the other count stemming from the second
incident. It otherwise convicted him of all remaining counts—five lewd acts
involving Z.R., one lewd act involving M.D., and one molestation involving
Z.R. Afterward, at sentencing, the trial court ordered petitioner to serve a
total indeterminate term of 90 years to life in state prison. (CT 250–51).

D. Direct Appeal

On appeal of his convictions, petitioner challenged the introduction of
his uncharged bad acts as revealed in the cellphone evidence and his cousin's
allegations of sexual abuse, as well as the CSAAS testimony. He claimed that
the challenged evidence shouldn't have been admitted under the pertinent
California Evidence Code sections and that the admission of the evidence
violated federal due process. (LD 3 at 24–49).[6] He argued, too, that Z.R.'s
testimony was too equivocal to support the sexual penetration conviction
and too generic to establish any more than the three lewd acts she had
managed to identify by number. (*Id.* at 19–23). The California Court of
Appeal rejected each of these claims in a fully reasoned opinion. (LD 5).

---

[6] Relatedly, petitioner added a cumulative error claim arguing that the combined effect of
more than one trial error—even if individually harmless—was prejudicial. (LD 3 at 56).

First, the court of appeal ruled that the cell phone evidence had been appropriately admitted under Evidence Code § 1101(b), which creates an exception to the general ban found in § 1101(a) on character or other bad acts evidence offered only to show criminal predisposition to commit the charged crimes.  Cal. Evid. Code § 1101.  The court agreed with the trial court that the evidence was relevant to prove at least petitioner's "intent," which "was put at issue when he pleaded not guilty to the crimes charged." (LD 5 at 26–30).  The court then found that the trial court had reasonably exercised its discretion under Evidence Code § 352, which confers "discretion" to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  Cal. Evid. Code § 352.  It held that the evidence "was not unduly prejudicial" because (among other reasons) the cellphone evidence was "far less inflammatory than the testimony from the victims regarding how defendant sexually abused them." (*Id*. at 30).  It also recognized that the trial court had instructed jurors that the cellphone evidence could be considered only "for the limited purposes of deciding whether" defendant "acted with the intent to arouse, appeal to or gratify the lust, passions, or sexual desires of himself or a child," or in deciding whether the "defendant's alleged actions were not the result of mistake or accident."  (CT 202).  They were told not to consider the evidence for "any other purpose"—including to find that defendant "has a bad character or is disposed to commit crime"—and that it was "not sufficient by itself to prove that the defendant is guilty of the crimes charged."  (*Id*.).

Second, the court of appeal rejected the claim that the evidence of prior uncharged crimes should have been excluded under Evidence Code § 352 as propensity evidence that was unduly prejudicial, misleading, and confusing.

(LD 5 at 22–26). This evidence was admitted under Evidence Code § 1108, which exempts a "defendant's commission of another sexual offense or offenses" from the general ban on propensity evidence when those prior crimes are similar to the charged crimes—so long as its probative value is not substantially outweighed by risks of undue prejudice, juror confusion, or other exclusionary factors listed in § 352. Cal. Evid. Code § 1108(a). Noting that the uncharged crimes involving petitioner's cousin counted as sexual propensity evidence under § 1108, the court of appeal agreed with the trial court that the uncharged acts were similar enough to the charged crimes. Contrary to what petitioner had argued, the court found that the relevant point of comparison was not differences in his age at the time of the crimes but the common nature of the abuse which targeted children as young as eight or nine years old. (LD 5 at 25). It also found that the trial court was within its discretion to find that the prior crimes were not "unduly remote in time" given that other courts had allowed dated incidents 20 to 30 years before the charged crimes to be admitted under § 1108. (*Id.*).[7] Moreover, the court of appeal underscored that the jury presumptively followed the trial court's limiting instructions, which cautioned that if jurors were to find petitioner committed the uncharged crimes, that "conclusion [was] only one factor to consider along with all the other evidence" and "not sufficient by itself to prove defendant [was] guilty" of the charged crimes. (*Id.* at 25–26; CT 207). Indeed, the court observed, if the jury had been unable or unwilling to follow those instructions because of some impulse to "punish" petitioner for his prior crimes, it wouldn't have acquitted him of the second

---

[7] Though not introduced at trial, the prosecution proffered the fact of petitioner's 1984 conviction for indecent exposure when seeking to admit the prior crimes under § 1108. Both state courts credited that proffered fact to reinforce their shared finding that the prior crimes evidence was not too old to introduce just because it was from the late 1970s, since similar conduct continued into the 1980s. (1 RT 4; LD 5 at 25; CT 115).

sexual penetration charge.  (LD 5 at 26).

Third, the court of appeal found no merit to petitioner's arguments
over the admissibility of the CSAAS evidence under California's expert
evidence rules.  *See*, *e.g.*, Cal. Evid. Code § 801(a) (permitting expert to
testify about topics "sufficiently beyond common experience that the opinion
of an expert would assist the trier of fact").  Recognizing the continued
acceptance of CSAAS testimony in prosecutions for child sex crimes, the
court rejected petitioner's "suggestion that jurors no longer harbor confusion
or misconceptions about how children react to sexual abuse."  (LD 5 at 16–
17).  Besides, as the court of appeal noted, it was bound by the California
Supreme Court's decision reaffirming that CSAAS evidence remains
admissible "where, as here, the credibility of each victim is placed in issue
due to counterintuitive behavior."  (*Id.* at 17) (citing *People v. McAlpin*, 812
P.2d 563, 568–570 (Cal. 1991)).  The court also dismissed petitioner's
"claim that CSAAS is no longer accepted within the scientific community"
and so should have been excluded as unreliable.  (*Id.* at 17–18).  It pointed
to "more than three decades" of state caselaw endorsing the use of CSAAS
testimony when, as here, "it is not offered as proof that a molestation
occurred but to rehabilitate the child victim's credibility when the defense
suggests the victim's postabuse [sic] conduct is inconsistent with having
been abused."  (*Id.* at 19).

Alternatively, the court of appeal found that even if the CSAAS
testimony should have been excluded, there was "no reasonable probability
of a more favorable result had the evidence been excluded."  (*Id.* at 20).  The
court highlighted the substantial evidence of petitioner's guilt—including
from the victims' direct testimonies and petitioner's own Instagram
messages to Z.R.  (*Id.* at 21).  It also explained that "any risk" of juror misuse
"was eliminated by [the expert's] clear statements that she did not review

police reports, meet with the victims, interview witnesses, or review witness statements" in petitioner's case. (*Id.*). It added that the expert admitted on cross-examination that her CSAAS testimony was "not evidence that [petitioner] committed any of the charges." (*Id.*). And last, it stressed that the jury presumptively followed the trial court's limiting instructions, which cautioned that CSAAS testimony "is not evidence that the defendant committed any of the crimes charged" and that jurors "may consider this evidence only in deciding whether or not [the victims'] conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of their testimony." (CT 208).[8]

As for petitioner's federal due process arguments, the court of appeal recognized that trial evidence "will not offend due process" unless its admission "is so prejudicial as to render the defendant's trial fundamentally unfair." (LD 5 at 30). Applying that general standard, the court first found no due process violation in the use of the cellphone evidence because "the trial court properly conducted the required analysis under Evidence Code section 352 and acted within its discretion in admitting" that evidence for permissible purposes like establishing petitioner's intent. The court of appeal then rejected petitioner's due process objection to the use of the uncharged sex crimes because it was bound by the California Supreme Court's decision that use of sexual propensity evidence under § 1108 is constitutional since trial courts retain discretion to exclude such evidence under § 352. (*Id.* at 24) (citing *People v. Falsetta*, 986 P.2d 182, 187–191 (Cal. 1999)). And finally, the court rejected petitioner's due process challenge to the CSAAS testimony because not only had the U.S. Supreme

---

[8] Thus, having "assumed" only one possible—but harmless—evidentiary error at most with the admission of the CSAAS testimony, the court of appeal rejected petitioner's cumulative error claim since there were no multiple trial errors to accumulate. (LD 5 at 37−38).

Court permitted use of similar evidence (battered child syndrome) over due process concerns, but also because many California state courts had likewise found nothing unconstitutionally unfair in the use of CSAAS testimony for child sex crime cases.  (*Id.* at 19–20).

Finally, beyond the evidentiary challenges, the court of appeal rejected petitioner's insufficiency of evidence claims based on the alleged equivocalness or genericness of Z.R.'s testimony.  To start, the court recognized that it had to view the record in the light most favorable to the judgment, presume that the jury resolved evidentiary conflicts in favor of the prosecution, and avoid reevaluating the credibility of witnesses.  (LD 5 at 9).  Under those standards, the court of appeal found that the jury was entitled to credit Z.R.'s belief that petitioner penetrated her during at least one of the two movie incidents.  (*Id.* at 10).  Any equivocation, the court explained, concerned possibly which theater the penetration happened in, "not whether defendant actually did it."  (*Id.*).  Likewise, viewing the evidence with all inferences in support of the lewd act verdicts, the court found that Z.R.'s testimony was sufficient to show five lewd acts had been committed because she recalled at least three by number and otherwise testified that she was "repeatedly" and "frequently" touched more than once each summer for four straight years.  (*Id.* at 13).[9]  Under California law, such descriptions—like "twice a month" or "every time we went camping" during "the summer before my fourth grade"—are considered legally adequate to prove the "number of acts" and "the general time period" in which those acts occurred.  (*Id.*) (quoting *People v. Jones*, 792 P.2d 643, 655–56 (Cal. 1990)).

---

[9] The court of appeal also mentioned that the jury could have credited the alleged lewd act in church described by police (1 RT 257–58), even though Z.R. couldn't remember that incident or reporting it to social services as police had testified.  (LD 5 at 13).  As she later conceded on redirect examination, however, Z.R. said that her memory would have been better a year earlier (when she had first talked to social services) before she began "blocking th[o]se events out" afterward to "keep [her] mind off" them.  (1 RT 182–83).

After these unsuccessful efforts to overturn his convictions in the court of appeal, petitioner sought discretionary review in the California Supreme Court. But the state's highest court summarily denied petitioner's request with no comment. (LD 7). This counseled § 2254 petition then followed.

## II.

## DISCUSSION

Petitioner reasserts in his habeas petition the same claims rejected on their merits by the California Court of Appeal in the last reasoned state court decision. (ECF 1–2, Memorandum in Support of Petition ("Pet.") at 11–31). The court of appeal's opinion is thus the pertinent decision subject to habeas review under AEDPA. *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018); *Cannedy v. Adams*, 706 F.3d 1148, 1156–59 (9th Cir. 2013). AEDPA precludes de novo review of petitioner's claims, however, unless he first proves that court of appeal's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[10] A state court decision cannot be "contrary to" clearly established federal law under § 2254(d)(1) unless it applied a rule directly contradicting one announced by the Supreme Court or decided the case differently than a Supreme Court case with indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). And "an *unreasonable* application of federal

---

[10] While de novo review is also possible if the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), the first (and only) time petitioner mentions § 2254(d)(2) is in his traverse, but even then, only for his insufficiency of evidence claim. (ECF 10 at 3). Never mind that claims raised that way are generally waived. *See Robinson v. Kramer*, 588 F.3d 1212, 1217 (9th Cir. 2009); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). Challenges to sufficiency of evidence are reviewed under § 2254(d)(1)—not § 2254(d)(2). *See Maquiz v. Hedgpeth*, 907 F.3d 1212, 1217 (9th Cir. 2018); *Emery v. Clark*, 604 F.3d 1102, 1113–15 (9th Cir. 2010).

law is different from an *incorrect* application of federal law." *Id.* at 410. "To meet that standard, a prisoner must show far more than that the state court's decision was 'merely wrong' or 'even clear error'" according to controlling Supreme Court precedent. *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (quoting *Virginia* v. *LeBlanc*, 582 U.S. 91, 94 (2017) (per curiam)). He "must show that the state court's decision is so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Balbuena v. Sullivan*, 980 F.3d 619, 633 (9th Cir. 2020).

A. <u>The Failure to Allege that the Court of Appeal's Decision Was Unreasonable under AEDPA Bars Relief on the Face of the Petition</u>

As a threshold matter, the petition—on its face—fails to allege petitioner's habeas claims in proper AEDPA terms, as evidenced by the fact that the petition is substantively identical to his opening brief on appeal. (*Compare* LD 3 at 21–22, 24, 37–43, 44–50, *with* Pet. at 12–13, 14, 15–20, 22–26, 27–31). Merits aside, that reveals a critical misunderstanding of collateral review under § 2254. *See Davis v. Ayala*, 576 U.S. 257, 267 (2015). Federal habeas review is not just a different name for another chance at direct appellate review. *See Greene v. Fisher*, 565 U.S. 34, 40 (2011); *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012). Quite the opposite: federal habeas relief is "different in kind from providing relief on direct appeal" because, if nothing else, "undoing a final state-court judgment is an extraordinary remedy." *Brown v. Davenport*, 596 U.S. 118, 133 (2022) (cleaned up). That is why, for instance, "clearly established federal law" under § 2254(d)(1) only "refers to the holdings"—not dicta—of the Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412; *see Atwood v. Ryan*, 870 F.3d 1033, 1046 (9th

Cir. 2017).  It is also why satisfying § 2254(d) on its own terms is a strict "precondition" to federal habeas relief, not a potential "entitlement" to it. *Fry v. Pliler*, 551 U.S. 112, 119 (2007).  All the while, "petitioner carries the burden of proof" under § 2254(d).  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see Ochoa v. Davis*, 16 F.4th 1314, 1325 (9th Cir. 2021).  So to have even a chance at de novo review of his habeas claims, petitioner must prove that the court of appeal "managed to blunder so badly that every fairminded jurist would disagree" with its decision affirming his convictions.  *Mays v. Hines*, 592 U.S. 385, 392 (2021) (per curiam); *see Davenport*, 596 U.S. at 136 ("AEDPA asks whether *every* fair-minded jurist would agree" that a state court decision is wrong).

If these standards seem "difficult to meet," it is because they were "meant to be."  *Harrington*, 562 U.S. at 102.  By congressional design, AEDPA imposes a "highly deferential standard for evaluating state-court rulings."  *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997).  It "demands that state-court decisions be given the benefit of the doubt" if more than one outcome is debatable, *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam), and thereby "prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts," *Renico v. Lett*, 559 U.S. 766, 779 (2010). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."  *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam).

While this case is not one of those close calls, the consequences of AEDPA deference underscore how far petitioner's claims fall short of the required showings under § 2254(d).  To make those showings, petitioner cannot merely register his disagreement with the court of appeal's reasons

for its decision and recycle the same arguments—practically verbatim—raised and rejected on direct review.[11]  Rather, he must demonstrate that the court of appeal's decision was objectively unreasonable.  But since petitioner's habeas claims are not framed in proper AEDPA terms, much less convincingly argued in those terms, this oversight is reason enough to deny the petition on its face.  *See Davenport*, 596 U.S. at 127; *see also Shinn v. Ramirez*, 596 U.S. 366, 385 (2022) ("Where Congress has erected a constitutionally valid barrier to habeas relief, a court *cannot* decline to give it effect."); Rule 4 of Rules Governing Section 2254 Cases ("If it plainly appears from the petition . . . that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition.").

B.  <u>The Due Process Clause Provides an Essential—But Limited and Narrow—Right to Exclude Unduly Prejudicial Evidence When Its Admission Renders a Criminal Trial Fundamentally Unfair</u>

Even if generously construed in correct AEDPA terms, the petition still rests on many flawed assumptions and premises when casting petitioner's evidentiary challenges as federal due process violations.  The "Due Process Clause guarantees the fundamental elements of fairness in a criminal trial." *Spencer v. State of Tex.*, 385 U.S. 554, 563–64 (1967).  But as the Supreme Court has said "on more than one occasion, the Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).  Indeed, "given the myriad safeguards

---

[11] For instance, because it is a near carbon copy of his appellate briefs, the petition repeatedly mentions ineffective assistance of counsel as an ostensible basis for habeas relief.  (Pet. at 15, 20, 23, 26–27, 31).  But those were only "*conditional* claim[s] of ineffective assistance" raised on appeal in case any of the other underlying claims were found procedurally defaulted because of untimely defense objection at trial.  *Moore v. Johnson*, 2022 WL 16952262, at *1 n.2 (C.D. Cal. Sept. 30, 2022).  Since the court of appeal found no such procedural default, though, and instead addressed the claims on the merits, "there is no justiciable ineffective assistance claim" to consider here.  *Id.*; *see Garcia v. Dir., TDCJ-CID*, 73 F. Supp. 3d 693, 765 (E.D. Tex. 2014) (If state court found no procedural default, "contingent ineffective assistance of counsel claim is moot.").

provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial." *United States v. Hasting,* 461 U.S. 499, 508–509 (1983). One of those safeguards is, of course, the Due Process Clause. But federal due process "draws a boundary beyond which state rules cannot stray; it does not displace the law of evidence with a constitutional balancing test." *Perry v. Rushen*, 713 F.2d 1447, 1453 (9th Cir. 1983). Thus, as far a criminal defendant's constitutional right to exclude evidence is concerned, the Supreme Court has "clearly established" only that "the Due Process Clause forbids the introduction of evidence so unduly prejudicial as to render a criminal trial fundamentally unfair." *Andrew v. White*, 145 S. Ct. 75, 83 (2025) (reiterating that rule from *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)).[12]

In so doing, the Supreme Court has "defined the category of infractions that [can] violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990). So a rule of evidence, on its face or as applied, cannot exceed the bounds of due process unless it offends "fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency." *Id.* at 353 (internal citations omitted). That means routine

---

[12] Before *Andrew* recently clarified that the *Payne* due process principle is not so "general" as to be incapable of serving as "clearly established federal law" for AEDPA purposes, 145 S. Ct. at 82, the Ninth Circuit (and nearly every other circuit) maintained that the Supreme Court had "not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). Those pre-*Andrew* cases are thus likely abrogated now. *See, e.g., Garza v. Yates*, 472 F. App'x 690, 692 (9th Cir. 2012) (Reinhardt, J., concurring) (explaining that *Holley* is "wrong, and should be reconsidered in an appropriate case" because while the Supreme Court may have "expressly left open the question of whether the introduction of *propensity* evidence would violate due process *because it was propensity evidence*," it has not "left open the question of whether the admission of *unduly prejudicial* evidence could violate due process" since "due process entitles a defendant to a trial that is fundamentally fair").

admission of evidence will rarely infect a trial with fundamental unfairness unless it presents a "threat to the truth-seeking function of the trial process," *Hein v. Sullivan*, 601 F.3d 897, 915 n.12 (9th Cir. 2010), or impedes "the truth-finding function of the court and jury," *Phillips v. Ornoski*, 673 F.3d 1168, 1182 (9th Cir. 2012). Enlarging the scope of due process beyond those elements "would be a wholly unjustifiable encroachment . . . upon the constitutional power of States to promulgate their own rules of evidence to try their own state-created crimes in their own state courts." *Spencer*, 385 U.S. at 568–69. In short, the Due Process Clause (properly understood) sets only the metes and bounds of a fair trial; it doesn't impose per se "constitutional constraints on ordinary evidentiary rulings by state trial courts," especially since they are "called upon to make dozens, sometimes hundreds, of decisions concerning the admissibility of evidence." *Crane v. Kentucky*, 476 U.S. 683, 689 (1986); *see McCray v. State of Ill.*, 386 U.S. 300, 309 (1967); *Spencer*, 385 U.S. at 562.

Several legal principles pertinent to the petition here emerge from this recognition that the Due Process Clause provides an essential—but still limited and narrow—constitutional right to exclude unduly prejudicial evidence in criminal trials. First, contrary to petitioner's assumption, a mere violation of rules of evidence—whether found in contemporary codified procedures of state and federal courts or in traditional English common law—cannot for that reason alone violate the dictates of constitutional due process. The "Fourteenth Amendment does not confine the states to the common-law rules of evidence, however well established." *Great N. Ry. Co. v. State of Wash.*, 300 U.S. 154, 172 (1937). Nor does the Due Process Clause "encompass all traditional legal rules and customs, no matter how longstanding and widespread such practices may be." *United States v. LeMay*, 260 F.3d 1018, 1024 (9th Cir. 2001). As a result, the "Supreme

Court has cautioned against the wholesale importation of common law and evidentiary rules into the Due Process Clause of [the] Constitution." *Id.* at 1024–25. Even the Federal Rules of Evidence, which only became (nonconstitutional) federal law around 1975, altered or abrogated many common law rules of evidence even as they incorporated much of them. *See generally Funk v. United States*, 290 U.S. 371, 379 (1933); *United States v. Allery*, 526 F.2d 1362, 1364 (8th Cir. 1975).

Second, even on de novo review, federal habeas courts have no warrant to independently review state court determinations about the admissibility (or *in*admissibility) of evidence under state law. In fact, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). So in the collateral posture that § 2254 petitions come to federal court, a state court's relevant decision finding the presence—or absence—of trial error under applicable state law is beyond question and must be taken as given. *See DePetris v. Kuykendall*, 239 F.3d 1057, 1061–62 (9th Cir. 2001); *Jammal v. Van de Kamp,* 926 F.2d 918, 919 (9th Cir. 1991); *cf. Deck v. Jenkins*, 814 F.3d 954, 979 (9th Cir. 2016) ("We accept the [California Court of Appeal's] interpretation of California law and take as established that prosecutorial error occurred."). Otherwise, "every erroneous decision by a state court on state law would come here as a federal constitutional question," *Little v. Crawford*, 449 F.3d 1075, 1083 n.6 (9th Cir. 2006)—erasing the jurisdictional line set by § 2254(a). *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Yet beyond his overarching (and, as discussed next, mistaken) claim that criminal propensity evidence is categorically proscribed by the Due

Process Clause, the balance of petitioner's professed "due process" arguments depend on or presuppose predicate evidentiary errors under *state law*—including claimed mistakes in how the state courts assessed the relative probative value of the uncharged bad acts with their potential for undue prejudice under California Evidence Code § 352. (Pet. at 16–17, 25, 29–30). But not only do courts have "no authority to review [such] alleged violations of a state's evidentiary rules in a federal habeas proceeding," *Windham v. Merkle,* 163 F.3d 1092, 1103 (9th Cir. 1998), the court of appeal's finding that the uncharged bad acts were appropriately weighed under § 352 before their use at trial is a binding and unreviewable state-law determination.[13] *See Bradshaw*, 546 U.S. at 76; *Estelle,* 502 U.S. at 67–68; *see also DePetris*, 239 F.3d at 1061–62 (state court's admissibility determination under state law is binding on federal habeas court).

Third, just like similarly evaluated trial errors also often entwined with state law (*e.g.*, jury instructional mistakes or prosecutorial misstatements in closing), whether errors in admission of evidence rise to a federal due process violation depends on "examination of the entire proceedings." *Romano v. Oklahoma*, 512 U.S. 1, 12 (1994) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *cf. Cupp v. Naughten,* 414 U.S. 141, 147 (1973) (same for erroneous jury instructions); *Darden v. Wainwright*, 477 U.S. 168, 178–81 (1986) (same for prosecutorial misconduct in argument). After all, the common due process question is not just whether there is a trial error, but whether that claimed error "so infected the trial with unfairness as to make the resulting conviction a denial of due

---

[13] To this extent, then, petitioner's evidentiary claims—including his challenge to the CSAAS evidence—could be summarily dismissed as disguised, unreviewable state law claims. *See Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999); *Gray v. Netherland*, 518 U.S. 152, 163 (1996); *Groen v. Busby*, 886 F. Supp. 2d 1150, 1159–61 (C.D. Cal. 2012); *Duvardo v. Giurbino*, 649 F. Supp. 2d 980, 996 (N.D. Cal. 2009).

process." *Darden*, 477 U.S. at 181; *see Hein*, 601 F.3d at 914.  So "the effect
on the trial as a whole needs to be evaluated in context." *Floyd v. Filson*, 949
F.3d 1128, 1149–50 (9th Cir. 2020).  And when assessing that effect
holistically, the Supreme Court has emphasized that the protection against
unfairly prejudicial evidence is primarily afforded not by an exclusionary
rule enforced through the procedural guarantees of the Due Process Clause,
but by the substantive protections of enumerated rights in provisions like the
Fourth, Fifth, and Sixth Amendments.  *See*, *e.g.*, *Perry v. New Hampshire*,
565 U.S. 228, 237 (2012).

Perhaps foremost among those "safeguards available to defendants to
counter the State's evidence" are "the Sixth Amendment rights to counsel,"
to "compulsory process," and to "confrontation plus cross-examination of
witnesses." *Id.*  The record here (as summarized above) reveals that
petitioner received the benefits of all these Sixth Amendment safeguards.
Relatedly, when defense counsel has been "fully apprised, well prior to trial,
that [objectionable] evidence would be introduced" and "had a full and fair
opportunity to challenge this evidence," if not also to "present rebuttal
evidence," a fair trial can be had even with eventual admission of unwanted
damaging evidence. *Bey v. Bagley*, 500 F.3d 514, 522 (6th Cir. 2007).
Petitioner had the benefit of this protection, too, before trial.  Finally,
because jurors are presumed to follow instructions, *see Richardson v.
Marsh*, 481 U.S. 200, 210–211 (1987), defendants can rely on the use of
limiting instructions to cabin evidentiary errors within the bounds of a fair
trial. *See Perry*, 565 U.S. at 246.  These guardrails were also protectively
used in petitioner's trial.  So "apart from trials conducted in violation of
express constitutional mandates, a constitutionally unfair trial takes place
only where the[se] barriers and safeguards are so relaxed or forgotten . . .
that the proceeding is more a spectacle . . . or trial by ordeal . . . than a

disciplined contest." *United States v. Augenblick*, 393 U.S. 348, 356 (1969). Nothing in the record here, though, suggests that petitioner was tried in such patently unfair ways or disorderly circumstances.

Fourth, the constitutional measure of whether challenged evidence is so extremely prejudicial as to render a trial fundamentally unfair is not to be confused with the factual gauge of whether a given piece of evidence should be excluded under the discretionary rules providing for exclusion of relevant evidence when its probative value is substantially outweighed by the risk of undue prejudice. *See*, *e.g*., Cal. Evid. Code § 352; *compare* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). For one thing, the concerns behind these balancing rules are broader than and distinct from federal due process concerns: they primarily guard against inflaming emotional biases, confusing or misleading jurors, and wasting time. *See Spencer*, 385 U.S. at 562; *see also* Adv. Comm. Notes to Fed. R. Evid. 403 ("'Unfair prejudice' within this context means an undue tendency to suggest a decision on an improper basis, commonly . . . an emotional one."). For another thing, while the rules of evidence are generally "designed in the interest of fair trials," unfairness in the application of those rules "is no sure measure of unconstitutionality." *Augenblick*, 393 U.S. at 352.

So, on the one hand, a trial court may abuse its discretion by permitting irrelevant, confusing, cumulative, or inflammatory evidence to be introduced. *Cf. Andrew*, 145 S. Ct. at 78–79, 81–83 (taking as undisputed that, in woman's trial for husband's murder, pervasive use of pernicious sex stereotypes was both irrelevant and highly inflammatory); *McKinney v. Rees*, 993 F.2d 1378, 1385 (9th Cir. 1993) (finding no relevance or

permissible non-propensity purpose, in young man's trial for mother's murder, of nearly 60 pages of transcript testimony describing defendant's apparent "fascination with knives and with a commando lifestyle"). But that mistake in the balancing of probative value against prejudicial effect doesn't necessarily mean the admitted evidence "so infected the trial with unfairness as to render the resulting conviction or sentence a denial of due process." *Andrew*, 145 S. Ct. at 83 (cleaned up). Proving that prejudicial evidence should have been excluded in a trial court's discretion may thus almost always be necessary to show a due process violation, but on its own will often be insufficient.[14] *See Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc) ("A particular abuse of discretion by a state court may amount also to a violation of the Constitution, but not every state court abuse of discretion has the same effect."); *Williams v. Borg*, 139 F.3d 737, 740 (9th Cir. 1998) (Federal habeas relief is available "only for constitutional violation, not for abuse of discretion.").

On the other hand, since "it is certainly possible to have a fair trial even when state standards are violated," the "adherence to state evidentiary rules" will strongly suggest (if not prove on collateral review) that "the trial was conducted in a procedurally fair manner." *Jammal*, 926 F.2d at 919. Thus, if evidence is found—or, as here, presumed—to have been admitted under

---

[14] This is not to imply that an "item of evidence" is to be "viewed as an island, with estimates of its own probative value and unfairly prejudicial risk the sole reference points in deciding whether the danger substantially outweighs the value." *Old Chief v. United States*, 519 U.S. 172, 182 (1997). The trial court may "take account of the full evidentiary context of the case as the court understands it when the ruling must be made." *Id.* But because the trial court has "considerable leeway" when arriving at that ruling, it is reviewed on appeal only for manifest abuse of discretion. *United States v. Sullivan*, ---F.4th---, 2025 WL 796111, at *7 (9th Cir. Mar. 13, 2025) (direct review of district court's evidentiary ruling under Federal Rule 403); *compare People v. Dworak*, 490 P.3d 330, 343–344 (Cal. 2021) (same for direct review of state trial court's evidentiary ruling under Evidence Code § 352). And so it always remains "important that a reviewing court evaluate the trial court's decision from its perspective when it had to rule and not indulge in review by hindsight." *Old Chief*, 519 U.S. at 183 n.6.

state law based on a reasonable discretionary weighing of the evidence's potential prejudicial effect against its offsetting probative value, it is hard to conceive a case when the use of such properly admitted evidence could ever deprive a defendant of a fair trial. *See*, *e.g.*, *LeMay*, 260 F.3d at 1027 ("If the prior acts of molestation were properly admitted under Rule 403, there can have been no as-applied constitutional violation."); *cf. Perry*, 713 F.2d at 1453 ("[A] separate consideration of due process will rarely be needed in day-to-day application of the rules of evidence."). "All evidence introduced against a criminal defendant might be said to be prejudicial if it tends to prove the prosecution's case." *LeMay,* 260 F.3d at 1026. But just because evidence might be "*highly* prejudicial" doesn't make it "necessarily *unfairly* prejudicial." *United States v. Thornhill*, 940 F.3d 1114, 1123 (9th Cir. 2019) (original emphasis). So the "admission of even highly prejudicial evidence" will not "necessarily trespass on a defendant's constitutional rights." *LeMay*, 260 F.3d at 1027.

On their own, these overarching due process principles explain why petitioner "bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown,* 404 F.3d 1159, 1172 (9th Cir. 2005); *see Andrew*, 145 S. Ct. at 83 (Alito J., concurring) (due process violation depends on "properly admitted evidence" being "overwhelmed by a flood of irrelevant and highly prejudicial evidence that renders the trial fundamentally unfair"). So even on de novo review, the chances of federal habeas relief on petitioner's evidentiary claims are exceedingly low. When AEDPA deference applies, however, those chances become vanishingly slim because petitioner's burden becomes doubly heavy. *See Andrew*, 145 S. Ct. at 83 (The "ultimate question is whether a fairminded jurist could disagree" that prejudicial evidence so infected a trial with fundamental unfairness as to deny due process.); *Garza*, 472 F. App'x at 692 (Reinhardt, J., concurring)

(Because the *Payne* "'fundamental conceptions of justice' standard is a broad one," most "state court applications of it are therefore likely to be reasonable.") (citing *Harrington*, 562 U.S. at 101).

C. Petitioner Has Identified No Supreme Court Precedent Establishing that Propensity Evidence is Prohibited by the Due Process Clause

Start with petitioner's claim that the admission of his uncharged bad acts—as revealed in the cellphone evidence and his cousin's testimony of child sex abuse—violated federal due process because the evidence was used only to show his "predisposition to commit the alleged offenses."  (Pet. at 23, 27, 30).  As required by § 2254(d)(1), petitioner must identify Supreme Court precedent establishing the premise for his claims—that the Due Process Clause categorically prohibits the admission of uncharged bad acts, including prior crimes, offered solely to show criminal propensity.  *See Lockyer v. Andrade*, 538 U.S. 63, 70–71 (2003).  Yet so far, the Supreme Court has "express[ed] no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."  *Estelle*, 502 U.S. at 75 n.5; *accord United States v. Porter*, 121 F.4th 747, 752 (9th Cir. 2024) (No Supreme Court case has held "that it would be improper to admit propensity evidence in sexual assault cases" under the Due Process Clause.); *Kipp v. Davis*, 971 F.3d 939, 951 n.8 (9th Cir. 2020) ("[T]here is no clearly established law that addresses whether the admission of a defendant's criminal history or prior bad acts would violate due process."); *Mejia v. Garcia*, 534 F.3d 1036, 1047 (9th Cir. 2008) (The "United States Supreme Court has never established the principle that introduction of evidence of uncharged offenses necessarily must offend due process."); *Larson v. Palmateer,* 515 F.3d 1057, 1066 (9th Cir. 2008) ("The Supreme Court has expressly reserved the question of whether using evidence of the defendant's past crimes to show that he has a

propensity for criminal activity could ever violate due process.").

The principal cases cited by petitioner—like *Michelson v. United States*, 335 U.S. 469 (1948), and *Boyd v. United States*, 142 U.S. 450 (1892)—do not establish otherwise.[15]  To be sure (as petitioner notes), the traditional rule precluding character evidence offered solely to prove criminal predisposition has deep roots in English common law.  (Pet. at 27–29).  And that general propensity rule has been carried forward in modern rules of evidence.  *See*, *e.g.*, Cal. Evid. Code § 1101(a) (precluding "evidence of a person's character or a trait of his or her character"—including "evidence of specific instances of his or her conduct"—"when offered to prove his or her conduct on a specified occasion"); *see also* Fed. R. Evid. 404(a), 404(b)(1).  But as explained, even when a "common insight" like the general propensity rule is reflected in "federal statutes as well as state and federal rules of evidence and common law," such a broad "consensus" is still not "inevitably congruent with the dictates of the Constitution."  *Crane*, 476 U.S. at 689.

Evidently misunderstanding these first principles, petitioner reads *Michelson* and *Boyd* incorrectly as *constitutional* decisions placing—in the Due Process Clause—a categorical prohibition against *any* evidence that could be offered to show criminal propensity.  (Pet. at 23–25, 27–29).[16]  But

---

[15] The other main case he cites, *Brinegar v. United States*, 338 U.S. 160 (1949), is farther afield.  In that case, which dealt with admissibility standards for evidence between suppression hearings and the guilt phase of trials, the Court remarked (in dicta no less) that historical "rules of evidence" are "to some extent embodied in the Constitution," which is undeniably true so far as it goes.  *Id.* at 174.  And the cases he adds in his traverse dealt with limits on the *exclusion* of defense evidence, not on the *admission* of state's evidence.  (ECF 10 at 4–5).  A defendant's right to introduce exculpatory evidence stems from enumerated rights and implicates concerns beyond just due process that are not coextensive with the right to exclude inculpatory evidence.  *See generally* Colin Miller, *A Constitutional Right to Exclude Evidence*, 12 Tex. A&M L. Rev. 317 (2024).

[16] Separately, petitioner also apparently misapprehends "the history of evidentiary rules regarding a criminal defendant's sexual propensities," which "is ambiguous at best,

those cases relied not on federal constitutional demands, but on the
Supreme Court's inherent "supervisory power" over federal courts. *Spencer*,
385 U.S. at 563, 572–74 n.4–6. That supervisory power was needed at the
time to "formulate[] rules of evidence to be applied in federal criminal
prosecutions" since the Federal Rules of Evidence wouldn't be enacted until
decades later. *McNabb v. United States,* 318 U.S. 332, 341 (1943). But the
rules created through such power, while "deemed desirable from the
viewpoint of sound judicial practice," *Cupp,* 414 U.S. at 146, were not
necessarily "required by the Constitution," *Bank of Nova Scotia v. United
States,* 487 U.S. 250, 254 (1988). Indeed, there remains much daylight
between the "narrow" demand of due process and the "broad exercise of
supervisory power"—"for not every trial error or infirmity which might call
for application of supervisory powers correspondingly constitutes a 'failure
to observe that fundamental fairness essential to the very concept of
justice.'" *Donnelly*, 416 U.S. at 642 (quoting *Lisenba v. California*, 314 U.S.
219, 236 (1941)).

　　Thus, contrary to petitioner's mistaken reading of his own cited cases,
the Supreme Court has "never held that the use of prior convictions to show
nothing more than a disposition to commit crime would violate the Due
Process Clause of the Fourteenth Amendment." *Spencer*, 385 U.S. at 572–
74. Even more misplaced, then, is petitioner's supposition that the use of
other bad acts—when offered for non-propensity purposes (as with the
cellphone evidence)—is also forbidden by the Due Process Clause. At the
same time that common-law courts established the general propensity rule,

---

particularly with regard to sexual abuse of children." *LeMay*, 260 F.3d at 1026 (quoting
*United States v. Castillo,* 140 F.3d 874, 881 (10th Cir.1998)). American courts "routinely
allowed propensity evidence in sex-offense cases, even while disallowing it in other
criminal prosecutions." *Id*. at 1027. "As early as 1858," in fact, many common law courts
were relaxing the rule against propensity evidence when the charged offense involved a
sex crime. *Id*.

they developed "broad" exceptions to that rule—"whose application [was] left
largely to the discretion of the trial judge"—permitting other bad acts
evidence when offered to prove non-propensity matters like "intent, identity,
malice, motive, and plan." *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6
(1983). What's more, the common law of evidence historically "recognized
that any unfairness resulting from admitting prior [bad acts] was more often
than not balanced by its probative value and permitted the prosecution to
introduce such evidence without demanding any particularly strong
justification." *Id.* The Supreme Court has thus rejected the premise "that
the common law regarded the admission of prior [bad acts] as grossly unfair
and subject to some sort of blanket prohibition." *Id.*

   None of this is to deny the valid concerns when propensity evidence is
offered for no purpose other than criminal predisposition. "The question,
however, is whether it is acceptable to deal with the potential for abuse
through nonconstitutional sources like the [rules of evidence], or whether
the introduction of this type of evidence is so extremely unfair that its
admission violates 'fundamental conceptions of justice.'" *Dowling*, 493 U.S.
at 352. Nor is it to suggest that the Supreme Court will *never* hold that the
propensity rule can be underwritten by federal due process. *See*, *e.g.*,
*LeMay*, 260 F.3d at 1025 (outlining counterarguments why "general ban on
propensity evidence" may have "requisite historical pedigree to qualify for
constitutional status"). It's just to say that, so far, the Supreme Court has
reserved that question—and not taken "the logical next step" in
constitutionalizing that rule through the Due Process Clause. *White v.
Woodall*, 572 U.S. 415, 427 (2014).

   In sum, petitioner has not carried his "very high burden in proving"
that the "traditional rule precluding the use of a defendant's prior bad acts to
prove his disposition to commit the type of crime charged is so ingrained in

Anglo–American jurisprudence as to be embodied in the due process clause
of the Constitution." *LeMay*, 260 F.3d at 1024.  And far from being
prohibited at common law, the longstanding use of other bad acts evidence
for non-propensity purposes is as venerable as the propensity rule itself.  *See
Spencer*, 385 U.S. at 563.  Petitioner thus cannot show that the court of
appeal's rejection of his challenge to the uncharged bad acts—based on mere
historical acceptance of the general propensity rule—was contrary to or an
unreasonable application of clearly established federal law.  *See Alberni v.
McDaniel,* 458 F.3d 860, 866 (9th Cir. 2006) ("We cannot conclude that the
[state court] acted in an objectively unreasonable manner in concluding that
the propensity evidence . . . did not violate due process, given that *Estelle*
expressly left this issue an 'open question.'"); *Mejia*, 534 F.3d at 1046 (When
petitioner "can point to no Supreme Court precedent establishing that
admission of propensity evidence . . . is unconstitutional," the state court's
decision admitting such evidence cannot be "contrary to clearly established
Supreme Court precedent.").

   D. Fairminded Jurists Could Agree that the Admission of the Uncharged
      Bad Acts Resulted in No Denial of Petitioner's Right to a Fair Trial

      Nor can petitioner prove that the court of appeal's decision affirming
the use of his uncharged bad acts was contrary to or an unreasonable
application of clearly established federal law just because, in his view, its
probative value was substantially outweighed by its "prejudicial" effect.
Recall that the court of appeal found that the cellphone evidence was
properly admitted under state law because it was evidence of other bad acts
offered to prove not his "disposition to commit" those bad acts, but his
"intent" to commit the charged crimes.  Cal. Evid. Code § 1101(b); *compare*
Fed. R. Evid. 404(b)(2) (permitting evidence "of any other crime, wrong, or
act" when offered "for another purpose, such as proving motive, opportunity,

intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). It also found that the evidence of petitioner's uncharged sexual misconduct was admissible under California law, which permits that evidence expressly for propensity purposes—to prove that he committed the charged sex offenses. *See* Cal. Evid. Code § 1108(a).[17] Then, for both items of evidence, the court of appeal found that the trial court reasonably exercised its discretion under Evidence Code § 352—by weighing the probative value of the evidence against its risk of undue prejudice—before admitting the evidence. And not least, the court of appeal found that the admission of the uncharged bad acts did not violate federal due process because it was relevant evidence offered for permissible purposes and accompanied by reasonable findings that the probative value of the evidence outweighed any risks of unfair prejudice, juror confusion, or other countervailing exclusionary factors in § 352.

None of these determinations contradicted or unreasonably applied the general due process rule prohibiting admission of evidence so unduly prejudicial as to deny a fair trial. For starters, the court of appeal recognized and applied, as appropriate, the same general fundamental fairness principle recognized in *Payne* and *Andrew* (LD 5 at 30), so its decision was not "contrary to" clearly established federal law. *Early v. Packer*, 537 U.S. 3, 8

---

[17] California modeled Evidence Code § 1108 (and its companion provision in § 1109 for domestic violence crimes) on similar federal rules approved by Congress years before. *See* Fed. R. Evid. 413 and 414. These federal rules likewise exempt sexual assault and child molestation cases from the default propensity rule in Federal Rule 404, which like its California equivalent in § 1101(a), precludes bad character or other bad acts evidence when offered solely to prove a defendant's propensity to commit crimes. *See* Fed. R. Evid. 404(a), 404(b)(1). As a result, federal prosecutors, too, may offer evidence of prior uncharged sexual misconduct to prove that a defendant committed charged sex offenses with no need to prove a non-propensity purpose under Rule 404(b)(2). Still, just as state courts can exclude sex crimes evidence in their discretion under Evidence Code § 352, federal courts retain discretion to do the same under Rule 403 even if that evidence is facially admissible under either Rule 413 or 414.

(2002) (state court opinion is not "contrary to" clearly established federal law "so long as neither the reasoning nor the result of the state-court decision contradicts" controlling Supreme Court precedent).  It then reasonably applied that general due process principle when affirming the trial court's evidentiary rulings, including its discretionary decision to admit the challenged evidence after performing the required § 352 weighing of probative value against potential prejudicial effect.  "Because AEDPA authorizes federal courts to grant relief only when state courts act *unreasonably,* it follows that the more general the rule at issue—and thus the greater the potential for reasoned disagreement among fair-minded judges—the more leeway state courts have in reaching outcomes in case-by-case determinations."  *Renico*, 559 U.S. at 779 (cleaned up).  "In turn, the state courts' greater leeway in reasonably applying a general rule translates to a narrower range of decisions that are objectively unreasonable under AEDPA."  *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)).

So too here.  The broad due process guarantee of a fair trial free of unduly prejudicial evidence is, of course, a highly generalized legal rule.  *See Andrew*, 145 S. Ct. at 82.  As a result, to prove that the court of appeal unreasonably applied that general standard, petitioner bears an exceptionally heavy burden—beyond just establishing state law evidentiary error with even a "highly" prejudicial effect on jurors' minds.  After all, the prosecution was not required to choose the least "prejudicially" incriminating method of proving its case to avoid a due process violation.  *See Old Chief*, 519 U.S. at 186-87; *United States v. Dixon,* 698 F.2d 445, 446 (11th Cir. 1983); *see also Sidibe v. Sutter Health*, 103 F.4th 675, 702 (9th Cir. 2024) ("It is inappropriate to exclude evidence under Rule 403 because it casts [the opposing party] in a *really* bad light.") (quoting *Cuff v. Trans*

*States Holdings, Inc.*, 768 F.3d 605, 609 (7th Cir. 2014)).  Instead, to meet § 2254(d)(1), petitioner must show that every fairminded jurist would agree with him that the challenged evidence was so unduly prejudicial—that it unconstitutionally infected the entire trial with so much unfairness—that it rendered his resulting conviction a denial of fundamental due process.  *See Andrew*, 145 S. Ct. at 83 (citing *Payne*, 501 U.S. at 825, and *Romano*, 512 U.S. at 13).  Petitioner's claim comes nowhere close to that necessary showing, especially since the court of appeal had the widest of berths for reasonable application of a rule as general as the fair-trial backstop in the Due Process Clause.  *See Cheney*, 614 F.3d at 995.

To start, fairminded jurists could agree with the court of appeal's finding that the cellphone evidence—admitted as other bad acts to establish the non-propensity issue of petitioner's intent—was consistent with due process.  "Only if there are *no* permissible inferences the jury may draw from the evidence" can the admission of "other acts" evidence ever violate due process.  *Jammal*, 926 F.2d at 920 (original emphasis); *accord McKinney* 993 F.2d at 1384 (Bad character evidence can violate due process only if there are no non-propensity inferences that the jury may draw from the evidence.); *Windham*, 163 F.3d at 1103–04 (same).  Because petitioner pled not guilty to the charged offenses, however, the prosecution had the burden of proving every element of the crimes—including his intent—beyond a reasonable doubt.  *See Estelle*, 502 U.S. at 69–70.  And the court of appeal's finding that the cellphone evidence was relevant to show such intent under state criminal law is a binding determination.  *See Bradshaw*, 546 U.S. at 76; *DePetris*, 239 F.3d at 1061–62.  Thus, it was not objectively unreasonable for the state court to find that admission of the cellphone evidence resulted in no denial of petitioner's right to a fair trial.  *See*, *e.g*., *McNally v. White*, 164 F.3d 630 (9th Cir. 1998) (admission of racial epithets

did not taint trial because statements were admitted as evidence of motive for murder); *Groen*, 886 F. Supp. 2d at 1160–61 ("Given that petitioner denied the charged allegations and claimed he . . . was no longer sexually attracted to young boys, it was not fundamentally unfair to introduce" media "depicting naked or semi-naked young boys"); *Smith v. Pliler*, 278 F. Supp. 2d 1060, 1075–76 (N.D. Cal. 2003) (reasonable for state court to find that prior acts of violence and stalking admitted to show intent and motive did not render trial unfair in violation of due process).

Similarly, fairminded jurists could agree that admission of petitioner's uncharged sex crimes was not so unduly prejudicial as to infect the trial with intolerable unfairness. Unlike the admission of "other acts" evidence for non-propensity purposes under § 1101(b), prior sex crimes are admitted under § 1108(a) precisely to show propensity to commit the charged sex crimes. The parallel federal rules are the same. *See* Fed. R. Evid. 413 and 414. Still, the California Supreme Court has long held that admission of evidence under § 1108(a) does not violate due process so long as trial courts retain discretion—as they do—to exclude such evidence beforehand under § 352 if deemed too prejudicial, confusing, or wasteful (among other exclusionary considerations). *See People v. Rhoades*, 453 P.3d 89, 110 (Cal. 2019); *Falsetta*, 986 P.2d at 189–190. And naturally bound by that state precedent, the court of appeal affirmed the use of the prior crimes evidence here over petitioner's due process challenge. (LD 5 at 24).

That was not an objectively unreasonable application of clearly established federal law. After all, faced with the same type of due process attacks on the comparable federal rules (which both § 1108 and § 1109 were modeled on), the Ninth Circuit itself has held—just like the California Supreme Court—that admission of sexual propensity evidence in sex crime prosecutions (under either Federal Rules 413 or 414) is not unfair when, as

here, the trial court maintains discretion to exclude that evidence (under
Rule 403) if its probative value is substantially outweighed by unfair
prejudice or other countervailing factors. *See LeMay*, 260 F.3d at 1031
("[W]e hold that Rule 414 is constitutional and does not violate due process,
equal protection, or any other constitutional guarantee."); *Porter*, 121 F.4th
at 752 (9th Cir. 2024) ("We reaffirm *LeMay* and join the other circuits in
holding that Rule 413 does not violate due process."); *Ray v. Kernan*, 646 F.
Supp. 2d 1102, 1123 (N.D. Cal. 2009) ("The reasoning of *LeMay* applies
equally to this case because the California rules are analogous to the federal
rules."). So it couldn't have been objectively unreasonable for the court of
appeal to likewise recognize that the trial court's discretionary authority to
exclude such evidence (under state law) when the balance between relevance
and prejudice tips too far unfairly was enough to keep the use of petitioner's
sexual propensity evidence within federal due process boundaries. And like
its determination of the admissibility of the cellphone evidence under
California law, the court of appeal's finding that the trial court reasonably
exercised its discretion under state law before admitting the prior crimes
evidence cannot be second-guessed on federal habeas review. *See
Bradshaw*, 546 U.S. at 76; *DePetris*, 239 F.3d at 1061–62.

Besides, past sexual misconduct is "indisputably relevant" to whether a
defendant committed current charged sex offenses. *LeMay*, 260 F.3d at
1026. And "introduction of relevant evidence, by itself, cannot amount to a
constitutional violation." *Id.* "There is, of course, a non-probative aspect to
all evidence of prior crimes or prior criminal conduct." *United States v.
Bailleaux*, 685 F.2d 1105, 1112 (9th Cir. 1982). And "evidence of a
defendant's prior acts of molestation will always be emotionally charged and
inflammatory." *LeMay*, 260 F.3d at 1030. But so, too, "is the evidence that
he committed the charged crimes." *Id.* As far as due process, though, when

a "jury learns of prior crimes committed by the defendant," the "conceded
possibility of prejudice is believed to be outweighed by the validity of the
State's purpose in permitting introduction of the evidence." *Spencer*, 385
U.S. at 561.  Moreover, the defendant's "interests are protected by limiting
instructions . . . and by the discretion residing with the trial judge to limit or
forbid the admission of particularly prejudicial evidence even though
admissible under an accepted rule of evidence." *Id*.  All this practical play in
the joints of the Due Process Clause means that there will invariably be a
wide range of fairminded disagreement over when use of any defendant's
prior crimes is so extremely prejudicial as to preclude a fair trial.  *See
Romano*, 512 U.S. at 13–14 (When it is "equally plausible" that jury drew
either damaging or helpful inference from evidence and "[e]ither conclusion
necessarily rests upon one's intuition," concluding that admission of that
evidence was "fundamentally unfair" would be "exercise in speculation,
rather than reasoned judgment.").  So too here for the court of appeal's case-
specific review of the trial court's inherently discretionary decision to admit
legislatively-authorized sex crimes evidence, under accepted state rules of
evidence, in an otherwise typical state sex crimes prosecution.  *See Renico*,
559 U.S. at 779; *Cheney*, 614 F.3d at 995.

    If nothing else, it was not objectively unreasonable for the court of
appeal to find no due process violation in the admission of uncharged bad
acts given the other procedural safeguards that protected petitioner's
overarching right to a fair trial.  As the court of appeal observed, the trial
court permitted defense counsel to fully cross-examine not only the police
investigator who found the cellphone evidence but also the testifying cousin
who alleged petitioner had sexually abused her as a child.  Petitioner does
not claim—nor does anything in the record suggest—that his counsel
performed at all inadequately in this regard or was otherwise unable to

mount a plausible defense.  Moreover, the trial court attentively gave limiting instructions to the jury for both the cellphone evidence and the prior crimes evidence, telling the jury what permissible inferences they could draw—and warning them about what impermissible inferences they *must not* draw.  *See*, *e.g.*, *Sullivan*, 2025 WL 796111, at *7 (recognizing that "unfair prejudice" of evidence can be avoided with "limiting instruction" to jury).  The jury is "presumed" to have followed those instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *see Spencer*, 385 U.S. at 561.  Indeed, the fact that the jury returned a partially split verdict in petitioner's favor belies any suggestion that jurors were unduly swayed by improper inferences or incapable of carefully parsing the evidence.  *See Jammal*, 926 F.2d at 920 ("Evidence introduced by the prosecution will often raise more than one inference, some permissible, some not; we must rely on the jury to sort them out in light of the court's instructions.").  With all these safeguards in play, there is more than ample room for fairminded jurists to agree that the admission of the uncharged bad acts was not "fundamentally unfair," since as many could agree as disagree that it created no "unacceptable risk" that petitioner was "convicted based on predisposition" alone, rather than proven criminal "wrongdoing."  *Porter*, 121 F.4th at 751–52.

E.  The Court of Appeal's Decision Affirming Use of CSAAS Evidence Neither Contradicted Nor Unreasonably Applied Clearly Established Federal Law

Petitioner also cannot meet his burden to show that the court of appeal's decision affirming the admission of the expert CSAAS testimony, which he maintained was inherently unreliable and factually unhelpful, contradicted or unreasonably applied any clearly established federal law pronounced by the Supreme Court.  "CSAAS describes various emotional stages, experienced by sexually abused children, that may explain their

sometimes piecemeal and contradictory manner of disclosing abuse." *Brodit
v. Cambra*, 350 F.3d 985, 991 (9th Cir. 2003). "While CSAAS evidence is
not relevant to prove the alleged sexual abuse occurred, it is well established
in California law [that] CSAAS evidence is relevant for the limited purpose of
evaluating the credibility of an alleged child victim of sexual abuse." *People
v. Lapenias*, 282 Cal. Rptr. 3d 79, 87 (Cal. Ct. App. 2021). So the court of
appeal's holding that CSAAS expert testimony remains relevant, reliable, and
admissible in California child sex abuse cases (LD 5 at 16–17) is a binding
interpretation of state law that cannot be disturbed on federal habeas review.
*See Bradshaw*, 546 U.S. at 76.

Even so, petitioner maintains that "the history and development of
CSAAS reveals that it is not scientific, and, therefore, the admission of such
testimony against Petitioner violated his Due Process rights." (Pet. at 15).
He contends that because "finders of fact—especially lay jurors—afford
particular weight to scientific evidence," somehow "due process concerns are
only heightened in such context." (*Id.*). In petitioner's view, then, use of
"scientific evidence" lacking sufficient "reliability" offends "fundamental
conceptions of justice." (*Id.* at 15–16). Critically missing from these
assertions, however, is any Supreme Court precedent establishing a federal
due process right to exclude scientific expert testimony claimed to be
unreliable. That omission is likely no accident since both state and federal
rules of evidence provide on their own—with no need for a redundant due
process check—robust and enforceable gatekeeping protections against
unreliable expert evidence. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow
Pharm., Inc.*, 509 U.S. 579 (1993); Cal. Evid. Code §§ 801, 802; *Sargon
Enters., Inc. v. Univ. of S. Cal.*, 288 P.3d 1237, 1252 (Cal. 2012).

Indeed, to the extent it has addressed the question, the Supreme Court
has disavowed petitioner's expansive view of the Due Process Clause to

include a constitutional right to exclude unreliable expert evidence.  The
Constitution "protects a defendant against a conviction based on evidence of
questionable reliability, not by prohibiting introduction of the evidence, but
by affording the defendant means to persuade the jury that the evidence
should be discounted as unworthy of credit."  *Perry*, 565 U.S. at 237.  But
that protection against unreliable expert testimony is primarily afforded
through express constitutional rights—like those inherent to the Sixth
Amendment.  *See id.*  Through counsel, for instance, defendants can "focus
the jury's attention on the fallibility of [expert] testimony during opening
and closing arguments," and even present competing expert testimony.  *Id.*
at 245–47; *see Diaz v. United States*, 602 U.S. 526, 541 (2024) (Jackson, J.,
concurring) ("[W]hen faced with flawed or faulty testimony" from experts,
"parties can utilize the traditional tools in a lawyer's toolkit, like vigorous
cross-examination and careful refutation in closing argument.").  Counsel
can also request—and trial courts may then issue—limiting instructions to
juries that they will presumptively follow when assessing the reliability of
evidence.  *See Richardson*, 481 U.S. at 210; *Perry*, 565 U.S. at 246; *Diaz*,
602 U.S. at 542 (Jackson, J., concurring).

   None of this is to imply that the Due Process Clause places no limit on
the introduction of unreliable expert evidence.  But it doesn't do so by
gatekeeping the reliability of expert evidence case-by-case, as the rules of
evidence are intended to do.  Instead, it "impedes convictions based on
dubious" evidence with the ultimate "constitutional requirement that the
government prove the defendant's guilt beyond a reasonable doubt."  *Perry*,
565 U.S. at 247.  And, as discussed, it ensures a constitutionally fair trial by
backstopping irrelevant evidence "so extremely unfair that its admission
violates fundamental conceptions of justice."  *Id.* (quoting *Dowling,* 493 U.S.
at 352).  Otherwise, "the task of determining the reliability of the evidence

presented at trial" is left to the jury, to be guided by "state and federal statutes and rules [that] ordinarily govern the admissibility of evidence." *Id.* And because those nonconstitutional sources can both regulate use of scientific expert testimony and preclude admission of expert evidence found to be intrinsically unreliable, *see Diaz*, 602 U.S. at 541–42 (Jackson, J., concurring), the Supreme Court has never expressed a need for "enlargement of the reach of due process" as an additional "constraint on the admission of evidence" claimed to scientifically unreliable or technically unhelpful. *Perry*, 565 U.S. at 244–45. Nor has the Supreme Court ever held (as petitioner evidently presumes) that expert testimony which might fail the reliability standards under applicable rules of evidence can—for that reason alone—automatically violate federal due process. *See id.* at 245 (The "potential unreliability of a type of evidence does not alone render its introduction at the defendant's trial fundamentally unfair.").

With no governing Supreme Court precedent to the contrary, then, the court of appeal could not have contradicted clearly established federal law when it affirmed the admission of the CSAAS testimony. *See Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam). Nor could it have unreasonably applied clearly established federal law. *See Mitchell v. Esparza,* 540 U.S. 12, 17 (2003) (per curiam). If anything, the court of appeal reasonably relied on how the Supreme Court itself has favorably treated similar expert evidence in *Estelle*. There, as the court of appeal recognized, the Supreme Court found no due process violation in the admission of "battered child syndrome" evidence.[18]

---

[18] Similarly, while not expressed in constitutional terms, the Supreme Court recently endorsed expert testimony admitted under the federal rules about "battered woman syndrome" to address a "number of myths and misconceptions" about domestic violence victims and to help jurors "better understand how those experiencing it respond to aggression or react to violence." *Diaz*, 602 U.S. at 540–41 (Jackson, J., concurring).

502 U.S. at 68–69.  Besides, the Supreme Court has rejected the idea that admissibility of evidence whose "fallibility" has been exposed or its "importance" questioned by current scientific research must be subjected to a "broadly applicable due process check."  *Perry*, 565 U.S. at 245 (discussing studies doubting reliability of eyewitness identification testimony).  That expansion, the Court explained, would impermissibly and needlessly "enlarge the domain of due process" over the jury's traditional province to assess the "reliability of evidence."  *Id.*

In view of all these countervailing principles undermining petitioner's arguments, fairminded jurists could readily agree with the court of appeal that the use of CSAAS expert testimony to assist the jury here posed no federal due process concerns.  *See Sims v. Rowland*, 414 F.3d 1148, 1151 (9th Cir. 2005); *see also Parker v. Matthews*, 567 U.S. 37, 44 (2012) (federal habeas courts cannot override the jury's role in weighing and crediting expert testimony); *Moses v. Payne*, 555 F.3d 742, 761 (9th Cir. 2009) (finding no legal support for "proposition that the Constitution is violated by the admission of expert testimony concerning an ultimate issue to be resolved by the trier of fact").  And, again, the correctness of the trial court's discretionary decision to admit that evidence under the state's evidence code is unassailable on federal collateral review.  *See Estelle,* 502 U.S. at 67–68.  In any case, were there any remaining doubt about the objective reasonableness of the decision to affirm the trial court's evidentiary ruling on the CSAAS testimony, the Ninth Circuit eliminated it in *Brodit*.

There, on federal habeas review, the Ninth Circuit held that CSAAS testimony did not violate the defendant's due process rights based on a combination of circumstances also present here: it was offered only to explain the victims' delayed disclosures or sometimes contradictory behaviors; the expert testified without knowledge of that defendant's

particular case; and the jury received cautionary instructions.  350 F.3d at 991.  That is a near mirror image of petitioner's prosecution: the trial court permitted CSAAS evidence to help the jury understand the victims' self-impeaching conduct including delayed disclosures (1 RT 6–7); the CSAAS expert interviewed none of the witnesses or knew any specific facts about the case (1 RT 193, 220); and the trial court instructed the jury that the testimony could not be used to decide that the victims had been abused, much less that petitioner was the one who abused them (CT 208).  Thus, given that *Brodit*—and similar recent federal habeas cases, *see*, *e.g.*, *Amaya v. Frauenheim*, 823 F. App'x 503, 505–06 (9th Cir. 2020); *Darbouze v. Kibler*, 2021 WL 6618675, at *15 (C.D. Cal. Nov. 17, 2021)—have rebuffed federal due process attacks on the use of CSAAS evidence, fairminded jurists could readily agree with the court of appeal's decision to do the same here.[19]

---

[19] As a result, there is no need to address the court's holding—as reasonable as it was—that even if the CSAAS testimony were erroneously admitted, it was harmless because there was no reasonable probability of a different result.  Nor is any extended discussion needed to dispose of petitioner's "cumulative error" claim.  (Pet. at 31–32).  The court of appeal, having "assumed" (not even found) one evidentiary error at most, dispatched that claim since by definition it requires at least two evidentiary errors to be accumulated.  (LD 5 at 37–38).  *See Lopez v. Allen*, 47 F.4th 1040, 1053 (9th Cir. 2022) (Where state courts found one trial error that was "reasonably deemed to be harmless," petitioner "failed to establish multiple errors of constitutional magnitude . . . amounting to a denial of due process."); *McGill v. Shinn*, 16 F.4th 666, 685 (9th Cir. 2021) ("If there are no errors, there is no need to consider their cumulative effect."); *Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011) ("Because we conclude that no error of constitutional magnitude occurred, no cumulative prejudice is possible.").  For the same reason, even if there were clearly established federal law permitting cumulative error claims in habeas proceedings, *contra*, *e.g.*, *Montana v. Egelhoff*, 518 U.S. 37, 53 (1996); *Sanchez v. McDowell*, 648 F. Supp. 3d 1241, 1276 (S.D. Cal. 2023), it was reasonable for the court of appeal to deny petitioner's claim since it reasonably found no individual evidentiary errors under the Due Process Clause.  *See Brodit*, 350 F.3d at 992 (Where "California Court of Appeal reasonably concluded that the premise—that there were errors—is absent," it was reasonable to conclude that no cumulative error occurred.); *Dancy v. Asuncion*, 2016 WL 11759110, at *10 (C.D. Cal. July 8, 2016) (Where "California courts did not rule contrary to, or unreasonably apply, clearly-established federal law in rejecting" petitioner's "individual claims of error," they could not have unreasonably applied *Chambers v. Mississippi*, 410 U.S. 284 (1949)).  And despite petitioner's apparent assumption,

F. <u>The Denial of Petitioner's Insufficiency of Evidence Claims Was Not an Unreasonable Application of Clearly Established Federal Law</u>

Finally, just as he had argued on appeal, petitioner contends that the evidence was insufficient to support the sexual penetration conviction and two of the five lewd act convictions involving victim Z.R.  The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979), clearly establishes the federal standard governing appellate review of insufficient evidence claims.  Under *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319.  In short, the court of appeal's only job under *Jackson* was not to decide "whether the trier of fact made the *correct* guilt . . . determination, but rather whether it made a *rational* decision to convict."  *Herrera v. Collins*, 506 U.S. 390, 402 (1993); *see People v. Mumin*, 534 P.3d 1, 15 (Cal. 2023) (State "appellate court retrospectively inquires whether a rational trier of fact *could have* found the defendant guilty beyond a reasonable doubt, based on all the evidence when viewed in the light most favorable to the prosecution.").

What's more, insufficient evidence claims "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference."  *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam).  The first is the deferential *Jackson* standard of review itself, 443 U.S. at 319, which makes it "the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."  *Cavazos*, 565 U.S. at 2.  The "additional layer of deference" comes from AEDPA.  *Juan H.*

---

insufficiency of evidence cannot be a trial "error" added to create cumulative error.  *See Abdul-Malik v. Evans*, 2011 WL 4899917, at *16 (C.D. Cal. Aug. 5, 2011).  Legal sufficiency of a verdict must be determined even with erroneously admitted evidence construed in favor of that verdict.  *See McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (per curiam).

*v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).  That means "a federal court
may not overturn a state court decision rejecting a sufficiency of the evidence
challenge simply because the federal court disagrees with the state court."
*Cavazos*, 565 U.S. at 2 (cleaned up).  "The federal court instead may do so
only if the state court decision was 'objectively unreasonable.'"  *Id.*  To make
that showing, of course, petitioner must convince a federal habeas court that
not one "fairminded jurist," *Davenport*, 596 U.S. at 135, could agree with
the court of appeal's decision that "*any* rational trier of fact" could have
believed the prosecution's version of events over petitioner's defenses.
*Jackson*, 443 U.S. at 319.  Unsurprisingly, this "double dose of deference . . .
can rarely be surmounted."  *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir.
2011).  This case is no exception.

     To start, the court of appeal applied the state-law equivalent of the
*Jackson* federal standard.  (LD 5 at 9 (quoting *People v. Albillar*, 244 P.3d
1062, 1070–71 (Cal. 2010)).  So its denial of petitioner's claims could not
have been contrary to *Jackson*.  *See Early*, 537 U.S. at 8.  To obtain de novo
review of his claims, then, petitioner must prove that the court of appeal
unreasonably applied the *Jackson* standard.  *See Maquiz*, 907 F.3d at 1217;
*Emery*, 604 F.3d at 1113–14.  Yet by petitioner's reckoning, the court of
appeal would have had to do everything *prohibited* by *Jackson* to overturn
his challenged convictions: reweigh the trial evidence, draw inferences in his
favor, second-guess the credibility of witnesses, and resolve conflicting
evidence against the prosecution.  *See United States v. Hubbard*, 96 F.3d
1223, 1226 (9th Cir. 1996); *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir.
1995).  And not only that, petitioner never approaches the court of appeal's
decision in correct AEDPA terms, which requires that a federal habeas court
defer to the state court's finding of sufficient evidence for a conviction so

long as any fairminded jurist could find the same.[20]  That oversight alone is fatal to petitioner's claim under § 2254(d)(1), for "the unreasonableness question" under § 2254(d) is not "a test of [the court's] confidence in the result it would reach under *de novo* review." *Shinn*, 592 U.S. at 119.

In any case, none of petitioner's arguments shows that the court of appeal incorrectly—much less unreasonably—applied *Jackson* when it rejected his insufficient evidence claims on direct review.  Start with his challenge to the sexual penetration conviction.  By petitioner's account, Z.R. "testified that she did not know if [the alleged penetration] happened," only that "she believes it did."  (ECF 10 at 1).  That was not enough, according to petitioner, for the jury to find him guilty of sexual penetration.  (Pet. at 11–13).  Looking at the same portion of the victim's trial testimony (1 RT at 120–23), though, the court of appeal found that if Z.R. was equivocating at

---

[20] For the first time in his traverse, petitioner asserts—with no analysis—that the rejection of his insufficient evidence claims was unreasonable under § 2254(d)(2).  (ECF 10 at 3).  Never mind that, as noted, such claims (if not waived) are reviewed under § 2254(d)(1).  Just "tacking on a perfunctory statement at the end of [his] analysis asserting that the state court's decision was unreasonable," as petitioner does here, cannot satisfy his burden under any part of § 2254(d).  *Sexton v. Beaudreaux*, 585 U.S. 961, 968 (2018).  Besides, even if § 2254(d)(2) could apply to insufficient evidence claims, the "role of a federal habeas court is . . . not to apply *de novo* review of factual findings and to substitute its own opinions for the determination made" by the state court.  *Ayala*, 576 U.S. at 276.  As with decisions reviewed under § 2254(d)(1), fact determinations reviewed under § 2254(d)(2) are not unreasonable if any fairminded jurist could agree with them.  *See Andrews v. Davis*, 944 F.3d 1092, 1107 (9th Cir. 2019) (en banc) (The "same standard of unreasonableness under § 2254(d)(1) applies under § 2254(d)(2).").  So, contrary to petitioner's premise, a state court factual determination is not unreasonable merely because a federal habeas court could reach a different conclusion if reviewing on a blank slate.  *See Wood v. Allen*, 558 U.S. 290, 301 (2010).  If reasonable minds reviewing the record might disagree about the factual finding in question, that reasonable disagreement requires deference to the state court's determination.  *See id.*  What's more, even on de novo review, underlying findings of fact in the state courts are generally presumed correct unless petitioner rebuts that presumption by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *Stevens v. Davis*, 25 F.4th 1141, 1165–66 (9th Cir. 2022); *Kirkpatrick v. Chappell*, 950 F.3d 1118, 1131 (9th Cir. 2020).  In short, even if it could apply to petitioner's insufficient evidence claims, § 2254(d)(2) opens no path to federal habeas relief here.

all, the jury could have thought it was only about which movie she had
attended with petitioner, not whether the penetration had happened.  (LD 5
at 10).  That was hardly an unreasonable conclusion to draw given that the
jury *acquitted* petitioner of the second charged count of sexual penetration—
which required the jury to believe the prosecution's theory about a second
sexual penetration occurring at a different movie theater.  If nothing else, the
jury's decision to find insufficient evidence of a second penetration suggests
that there was no reason for the court of appeal to doubt that the jurors had
carefully heard, considered, and weighed Z.R.'s testimony.  *See*, *e.g.*, *Villery
v. Holland*, 607 F. App'x 700, 701 (9th Cir. 2015) ("The jury took
dispassionate care in assessing the evidence, as its split verdict
demonstrates.").

But even if petitioner's interpretation of her testimony were right—Z.R.
could only say she "believe[d]" the first sexual penetration happened—the
jury was entitled to credit the victim's belief.  *See*, *e.g.*, *Bruce v. Terhune*,
376 F.3d 950, 957 (9th Cir. 2004) (credibility contest between victim and
defendant over sexual molestation is exclusively for jury to resolve); *People
of the Territory of Guam v. McGravey,* 14 F.3d 1344, 1346–47 (9th Cir.
1994) (upholding conviction for sexual molestation based entirely on
uncorroborated testimony of victim).  The jury could have perceived any
equivocation by Z.R. not as uncertainty about what she had experienced but
the natural reticence of a victim (still 16 years old) testifying in open court
about explicit sexual matters.  (1 RT 129–30, 148, 151).  *See*, *e.g.*, *Robertson
v. Cates*, 2020 WL 8680088, at *6 (C.D. Cal. Nov. 13, 2020) (jury could have
inferred that equivocal trial and preliminary hearing testimony resulted
from victim's fears over testifying).  As far as the court of appeal was
concerned, any of these plausible credibility determinations by the jury were
"entitled to near-total deference under *Jackson*."  *Bruce,* 376 F.3d at 957;

*see Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder *Jackson*, the
assessment of the credibility of witnesses is generally beyond the scope of
review."). When viewed with AEDPA deference on top, the court's decision
to respect the jury's province over witness credibility was the furthest
possible thing from wrong, let alone unreasonable. *See Marshall*, 459 U.S.
at 434 (Section 2254 "gives federal habeas courts no license to re-determine
credibility of witnesses whose demeanor has been observed by the state trial
court, but not by them."); *Kansas v. Ventris*, 556 U.S. 586, 594 n.* (2009)
("Our legal system, however, is built on the premise that it is the province of
the jury to weigh the credibility of competing witnesses."); *accord Aiken v.
Blodgett*, 921 F.2d 214, 217 (9th Cir. 1990).

Petitioner's attack on two of his five lewd act convictions involving Z.R.
fares no better. By his reckoning, Z.R.'s testimony was too generic to
support any more than three lewd act convictions because she couldn't
identify any more than three—by exact number. (Pet. at 14). But as the
court of appeal recognized, and petitioner does not seriously dispute, Z.R.'s
testimony established the kinds of acts committed (petitioner touched her
near her vagina), and the general period in which most of the acts occurred
(consecutive summers from 2013 to 2016). (1 RT 126–33). And Z.R.
described the frequency of the acts with adequate specificity when she said
that petitioner committed the lewd acts "repeatedly" and "frequently" in a
hot tub at petitioner's home during four consecutive summer trips there with
her adoptive family.[21] (*Id.* at 129–31, 133, 254–58). Under California law,

---

[21] And even if the jury were arbitrarily limited to finding only one lewd act for each of four
summers, there was evidence of another lewd incident that Z.R. said happened once at
church. To be sure, Z.R. denied this incident on cross-examination at trial, but there was
still corroboration of the incident by the police investigator who had heard Z.R. closer in
time to the alleged lewd act. (1 RT 182–83). Thus, fairminded jurists could debate
whether the jury could believe that the church incident was a separate (fifth) lewd act that

"nothing more is required" for a jury to reasonably determine the number of
abuse incidents with adequate specificity. *People v. Matute*, 127 Cal. Rptr.
2d 472, 479 (Cal. Ct. App. 2002); *see Jones*, 792 P.2d at 656–57. To
conclude otherwise, as petitioner maintains, would mean that the court of
appeal was compelled to find that no rational jury could have counted more
than three lewd acts based on Z.R.'s testimony. But that would not only
"unduly impinge[] on the jury's role as factfinder," it would require a "fine-
grained factual parsing" of her trial testimony that is inappropriate under
*Jackson*. *Coleman*, 566 U.S. at 655. Besides, "the only question under
*Jackson*" that matters is whether the jury's finding of five instead of three
lewd acts was "so insupportable as to fall below the threshold of bare
rationality." *Id*. at 656. It was neither incorrect nor unreasonable for the
court of appeal to find that constitutional minimum threshold met under an
objective view of Z.R.'s testimony.[22]

In the end, contrary to petitioner's implication, the court of appeal was
under no "affirmative duty to rule out every hypothesis except that of guilt
beyond a reasonable doubt" when deciding petitioner's sufficiency of
evidence claims. *Jackson*, 443 U.S. at 326. Perhaps some very generous

---

counted despite any apparent conflicts in Z.R.'s account. *See Jackson*, 443 U.S. at 326 (A
reviewing court "faced with a record of historical facts that supports conflicting inferences
must presume—even if it does not affirmatively appear in the record—that the trier of fact
resolved any such conflicts in favor of the prosecution.").

[22] That is assuming anyway that the jury's finding had to be relegated to the snippets of
Z.R.'s testimony that petitioner spotlights. It doesn't account for the highly
incriminating—and unchallenged—Instagram messages he exchanged with Z.R., which
convincingly corroborated her testimony. And if anything, the cellphone and prior crimes
evidence could only have reinforced rather than undermined the jury's findings. It
doesn't matter that petitioner contested the admission of that evidence—a reviewing
court assessing sufficiency of evidence under *Jackson* still "must consider all of the
evidence admitted by the trial court, regardless of whether that evidence was admitted
erroneously." *McDaniel*, 558 U.S. at 131 (cleaned up).

fairminded jurists *could* agree with his view that Z.R.'s testimony was too equivocal or generic to support the challenged convictions. But because not every fairminded jurist *must* agree with that perspective, petitioner cannot show that the court of appeal unreasonably applied the (already deferential) *Jackson* standard when rejecting his insufficient evidence claims by that court's own fairminded assessment. *See Cavazos*, 565 U.S. at 2; *Davenport*, 596 U.S. at 136; *Mays*, 592 U.S. at 392; *Balbuena*, 980 F.3d at 633.

## III.

## CONCLUSION

For all these reasons, it is recommended that the petition under 28 U.S.C. § 2254 be denied and that this action be dismissed with prejudice. *See* 28 U.S.C. § 636; G.O. 05-07.


Dated: March 21, 2025 _____/s/_____

STEVE KIM
United States Magistrate Judge